## THE JOHN F. GAYNOR.

### (District Court, D. Connecticut. June 27, 1898.)

COLLISION—SCHOONER AND TUG.

A schooner and tug colliding in Long Island Sound at night, *held* both in fault,—the schooner for changing her course, and luffing up into the wind, probably through the inattention of the captain or mate or both, who were the only persons on board, and who had been long on duty without sufficient sleep; and the tug for going for at least half a mile at right angles to the course of the schooner, and then changing course in order to cross her bow, when it was certain the schooner could not. avoid the tug's hawser and tow without changing her course.

This was a libel in rem by John B. Eaton and others, owners of the schooner Dreadnaught, against the steam tug John F. Gaynor, to recover damages resulting from a collision.

Alling, Webb & Morehouse and Harrington Putnam, for claimants.
Samuel Park, for libelants.

TOWNSEND, District Judge. At 5 o'clock on the morning of November 22, 1897, the claimant's steam tug Gaynor, 91 feet long, and having a scow in tow, ran into, struck, and sank libelants' schooner Dreadnaught, $39\frac{1}{2}$ tons, at a point in Long Island Sound about one mile west of Bartlett's Reef lightship. The wind was northwest, and blowing a good breeze. The tide was at the last quarter of the flood. The tug was on a voyage from Point Judith, R. I., to Sachem's Head, Conn. The schooner was bound from New York to Westerly, R. I., running free, and each vessel was going at about six miles an hour. Each boat carried the regulation lights. It was a good night for seeing the lights, and each vessel claims that it sighted the other at a good distance away. The libelants contend that the schooner kept about on a due east course, but that the tug failed to keep out of the way of the schooner, and changed her course so as to cross the schooner's bow. The claimants allege that the schooner changed her course, and thereby caused the collision. The evidence was almost entirely in the form of depositions, and is full of inconsistencies and contradictions. The theory of the collision advanced by the claimants receives some support from the admitted facts and other sources. It is admitted or proved that there were only two men on the schooner,—a captain and mate and steward; that the captain had been on duty, pumping, every 20 minutes, or steering the schooner, without rest or sleep, from ha.^ past 4 Sunday afternoon until the time of the collision, 5 o'clock Monday morning; that the mate-steward, who was paid extra because he did not have very much sleep when on these trips, either had been without sleep for $8\frac{1}{2}$ hours or was below asleep until the captain called him, just

before the collision; and that the captain of the schooner admitted that he had seen the red light of the tug for a considerable time before the collision. In view of the evidence as to Stewart, the schooner's mate, coming on board the tug without his coat, in view of the long hours of arduous work imposed on the captain and mate of the schooner, and of the whole evidence, I conclude that after the tug had ported her helm, and the vessels were going red to red, the schooner changed her course, and luffed up into the wind, through the inattention of the captain or mate or both, and that this change of course contributed to cause the collision. The question, then, arises as to whether the tug also was negligent. The principal witness for the claimants was Pendleton, the mate, who was steering the tug. According to his testimony, the schooner, when he first saw it, showed both lights, then for a few minutes only her red, and when she was a mile (afterwards changed by him to a half mile) away she luffed to port, showing her green light only, and from that time to the time of the collision kept a northeast course. He admits that for half a mile he thus proceeded at right angles in the then course of the schooner, and that near the close of the half mile he changed his own course to northwest, and struck the schooner amidships. He also admits that if he had simply kept his course after the schooner changed to the northeast, he would have avoided her, and that, although the schooner might have avoided his tug, she could not have avoided the tow without again changing her course. In thus going for a half mile at right angles to the course of the schooner and then changing his course in order to cross her bow, when it was then certain that the schooner could not avoid his hawser and tow without changing her course, was negligence.

Certain testimony as to a conversation between the captain of the schooner and the pilot of the tug was admitted subject to exception with the request that the court would afterwards rule thereon. The testimony as to the admissions of the pilot is admitted only for the purpose of qualifying the statements contained in his deposition. Let a decree be entered dividing the damages, and referring the matter to a commissioner.